UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA – TAMPA DIVISION

UNITED STATE OF AMERICA,
                              Plaintiff

v.                                                                        No. 8:19-cr-00069-WFJ-TGW

DENERIO EVERETT,
                              Defendant
_____/

ORDER DENYING MOTION TO SUPPRESS

Defendant Mr. Everett was indicted for being a felon in possession of a firearm, in violation of 18 U.S.C. 922(g)(1). Doc. 1. Mr. Everett moved to suppress the search of his automobile, from which police had seized the subject gun. Doc. 51. Mr. Everett stated that officers impermissibly extended the time of a traffic stop to allow for arrival of a narcotics detection dog. Further, he argued that the canine sniff search of his car occurred within the curtilage of his home, without probable cause, in violation of the teachings of *Florida v. Jardines,* 569 U.S. 1, 3 - 4 (2013)(K-9 sniff conducted within a home or its curtilage is full search requiring probable cause and warrant) or *Collins v. Virginia,* 584 U.S. ___, 138 S. Ct. 1663, 1671 (2018)(driveway abutting home is curtilage; auto exception to warrant

requirement does not apply inside curtilage).  The Government filed a response.  Doc. 58.  The Court held a suppression hearing on February 26, 2020.  The parties have each also supplied several supplemental briefings, Docs. 91, 92, 96, 97, which the Court appreciates.  The Court denies the Motion.

At the suppression hearing before the undersigned, a Tampa Police Department sergeant testified that his squad was doing drug surveillance in a Tampa neighborhood on September 6, 2018.  Mr. Everett was seen entering a surveilled house and then departed that house with a package he put in his car trunk.  Feb. 26, 2020 Hearing Transcript at 21 (hereafter Tr. at __).  The officers followed Mr. Everett's Kia automobile out of the area, and an officer[1] reported that Mr. Everett was not wearing a seatbelt.  At approximately 6:15 pm this officer called on his cellular telephone for a marked unit to follow Mr. Everett.  Mr. Everett drove to the 1700 block of Genesee Street.  Tr. at 22.  The officers arrived, following behind Everett, at about 6:18 pm.  Tr. at 30.  Mr. Everett had pulled into a yard at 1703 Genesee, about 50 feet off the roadway.  His car is shown in the photograph in the Appendix to this Order. as Exhibit 1.[2]  Prior to or while arriving, the sergeant had ordered a canine unit.

---

[1] This officer, Det. Fisher, did not testify.  Tr. at 27.  The State's Attorney dismissed or nolle prossed the tickets.  Tr. at 31.
[2] The Appendix contains a total of two exhibits: Exhibit 1 and Exhibit 3.

The marked unit was on the scene and parked in front at the shoulder of the street. Tr. at 34 - 36. The officer in the marked unit arrived at 6:18 pm and approached Mr. Everett, to write him a ticket for failure to wear a seat belt. Mr. Everett also did not have car title or proof of insurance, so the officer in the marked unit wrote up three citations.

Mr. Everett was detained but not arrested while the officer in the marked unit went back to his car to write the citations. The records show this officer ran a records and warrant check on Mr. Everett at 6:22 pm. Tr. at 42. Mr. Everett did not have any outstanding warrants or a suspended license. Tr. at 41. While this officer was parked writing the tickets back at his squad car near the roadside, he had his "wig-wag" lights on. Tr. at 36. The officer stated he handed the citations to Mr. Everett at approximately 6:45 pm (ticket print time was 6:45 pm).

While the officer in the marked unit was writing up the three citations, the canine handler officer arrived.[3] The canine handler testified at the hearing. Tr. at 44. The handler testified that Det. Fisher called him on his cellular telephone at approximately 6:17 pm and he arrived at 1703 East Genesee Street at 6:27 pm. The handler saw the marked unit officer writing up the tickets, and then was directed to the Kia, which was shut with the trunk shut. The handler walked the

---

[3] It is not in contest that the dog and handler were appropriately trained, certified, etc. for canine narcotics detection.

dog up the dirt driveway to the Kia. The dog alerted for narcotics at the front passenger door handle vents. Tr. at 51, 52 - 53. This dog alert happened within about a minute from when the handler arrived, spoke with the detective, and walked the dog around Mr. Everett's Kia; the Kia remained about 50 feet into the yard off the street (*See* Appendix at Exhibit 1). Tr. at 51.

The dog handler explained on cross-examination that after the episode concluded, he realized he "wasn't attached to the call" and he contacted dispatch and told them to log him onto the call. This was at 6:54 pm. Tr. at 54. He testified that as a canine officer and people working undercover, this is not uncommon. *Id.*

The officers searched the car after the dog alert. In the Kia the officers found a sandwich bag of marijuana (4.1 grams) under the driver's seat, a plastic bag containing 9 Alprazolam pills, a small zip lock bag containing 3 more Alprazolam pills, and 2 pills identified as Cyclobenzaprine. Inside the trunk, in the parcel Mr. Everett was seen with departing the surveilled house, was the charged firearm. On Mr. Everett's person was 2.4 grams of cocaine base in a plastic bag. Doc. 51 at 4.

*There Was No Inordinate Delay or Improper Stop*

There is no evidence presented that the reason for the stop, failure to wear a belt, was a false pretext. After the stop (approx. 6:18 pm), Mr. Everett was

detained in the side yard near his Kia while records were queried (approx. 6:22 pm) and tickets were being written (printed and handed to Mr. Everett at 6:45 pm). A narcotics detection dog arrived promptly and alerted on the Kia at about 6:30 pm. So by roughly 6:30 pm the officers had probable cause to search the Kia automobile, which was mobile and operable. Drugs were found, suggesting the canine was correct. In the Kia the search yielded drug contraband and the bag Mr. Everett was seen with contained a loaded firearm which he was prohibited from possessing. The record as presented shows this stop, which grew into an arrest, was temporally reasonable. This is not an unreasonable, prolonged stop of the type discussed in *Rodriguez v. United States,* 135 S. Ct. 1609, 1616 (2015); *see also United States v. Purcell,* 236 F.3d 1274, 1279 (11th Cir. 2001).

*The Dog Sniff Did Not Occur in Everett's Residential Curtilage*

The area where the dog sniff occurred is best depicted by the photographs here in the Appendix. Exhibit 1 is a contemporaneous photo of Mr. Everett's car in the spot he parked it, where it was subjected to the canine search that night. It is on the grass, diagonally about 7 - 12 feet from the white house at 1703 E. Genesee Street. Mr. Everett lived next door, in an immobile recreational vehicle parked at 1709 E. Genesee. The landlord testified the old RV did not run and had been parked there for years. Doc. 96-1 at 6 - 7. The layout of where Mr. Everett lived

in this RV can be seen in Exhibit 3, which is a non-contemporaneous photograph but the landlord testified it was accurate. Doc. 96-1 at 9 - 10.

In Exhibit 3, the immobile RV where Mr. Everett resided can be seen.[4] Mr. Everett's RV was about 35 feet to the left of where he parked, within a fence and gate. A fence and a gate came between Mr. Everett's Kia and Mr. Everett's RV home. If he had pulled within the fenced yard area where the RV was located, it would likely have been within his curtilage. The place where Mr. Everett placed his car is next to the white house, and in front of rear apartments, all of which were owned by Mr. Everett's landlord and were occupied. The landlord testified that the apartment dwellers drive down the dirt driveway and park behind the white house in front of the apartments. Doc. 96-1 at 12. The people that live in the white house park in front of the white house. *Id.*

The place where Mr. Everett parked his car that night, and where the canine was taken from the road area to conduct a sniff search, is not the curtilage of Mr. Everett's home. *See* Appendix. It is not a driveway abutting the home, as was encountered in *Collins v. Virginia, supra.* The spot where Mr. Everett parked his car was not appurtenant to his RV home. The location of his car in Exhibit 1 (in

---

[4] The Government argued based upon their records that Mr. Everett lived elsewhere. Tr. at 19. Indeed the pretrial bail report in this docket shows a different residence address for Mr. Everett. But the landlord's testimony was uncontradicted that Mr. Everett stayed at the RV with the landlord's permission. Doc. 96-1 at 3. The Court credits this testimony.

6

the grass between the dirt driveway and the white house) might be in the curtilage of the white house, but Mr. Everett did not live there.[5]  This area where his car is parked would not be considered part of the privacy of his RV home.  This area was outside a solid fence (roughly 5 to 6 feet tall), outside a gate and beyond a dirt driveway (that the landlord called "a road," *id.* at 4 and "a little driveway," *id.* at 6), about 35 feet from his RV trailer home.

This spot where the dog sniff happened was not Mr. Everett's or his home's curtilage.  *United States v. Dunn*, 480 U.S. 294, 301 (1987); *Jardines*, *supra*, 569 U.S. at 6 - 8 (defining curtilage).  Officers may deploy a narcotics detection dog during the course of a traffic stop.  *Illinois v. Caballes,* 543 U.S. 405, 409 (2005); *United States v. Holt,* 777 F.3d 1234, 1256 - 1257 (11th Cir. 2005); *Purcell*, *supra*.  Accordingly, the motion to suppress, Doc. 51, is denied.

**DONE AND ENTERED**, this 8th day of May, 2020.

_____
WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

---

[5] The hearing transcript is not clear, but the Court got the general impression from the landlord that where the Kia was parked that night was where Mr. Everett normally parked.  *See* Tr. at 56.  But it is clear that the spot where the Kia was parked is common to others, such as those living behind in the apartments or those in the white house close by to the right.